UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN JUAN LLOYD,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>D. CASTILLO, et al.,<br><br>　　　　　Defendants. | Case No.: 1:20-cv-00683-JLT-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 90)<br><br><u>14-Day Objection Period</u> |

Plaintiff Adrian Juan Lloyd is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983. This action proceeds against Defendants Castillo and Anderson on Plaintiff's First Amendment free exercise of religion claim.

## I.　　INTRODUCTION

On February 17, 2026, Defendants filed a motion for summary judgment addressing the merits of Plaintiff's claim. (Doc. 90.) Following an extension of time, Plaintiff filed an opposition to Defendants' motion (Doc. 96)[1] and Defendants replied (Doc 98).[2]

---

[1] On April 9, 2026, Plaintiff filed a document titled "Additional (Opposition to Summary Judgment Motion) Information." (Doc. 99.) The filing corrects a citation error in Plaintiff's opposition wherein Plaintiff states "the correct code 'that supports' Plaintiff's claim that a grey watch cap 'is' a religious item is CCR 3000 religious item." (*Id*.)

[2] On May 1, 2026, the Court issued its Order Granting Defendants' Motion to Strike Plaintiff's Sur-reply to Defendants' Motion for Summary Judgment, directing the Clerk of the Court to strike Plaintiff's filing of April 21, 2026. (Doc. 102.)

## II.    SUMMARY OF THE PARTIES' BRIEFING

### *Defendants' Summary Judgment Motion (Doc. 90)*

Defendants contend Plaintiff's First Amendment rights were not violated because the confiscation of Plaintiff's Rastafarian crown did not substantially burden the practice of his religion. Further, Defendants maintain the confiscation of the crown occurred pursuant to prison policy and was reasonably related to legitimate penological interests. Finally, Defendants contend they are entitled to qualified immunity. Defendants ask the Court to grant summary judgment in their favor and to dismiss this case.

### *Plaintiff's Opposition (Doc. 96)*

Plaintiff's opposition is comprised of his responses to Defendants' undisputed statement of material facts (Doc. 96 at 1-23), various unmarked exhibits (*id*. at 24-50), and Plaintiff's declaration in support of his opposition (*id.* at 52-59). The Court will address Plaintiff's specific arguments in its analysis where appropriate.

### *Defendants' Reply (Doc. 98)*

Defendants maintain they did not violate Plaintiff's First Amendment rights because Plaintiff's religious practice was not substantially burdened as Plaintiff did not need the specific crown at issue to practice Rastafarianism, Plaintiff does not meaningfully dispute alternative crowns were available for purchase and wear, and because Plaintiff testified he wore a gray beanie as a religious alternative without issue. As concerns Plaintiff's claim that the "patio policy at KVSP" burdens his religious practice, Defendants contend Plaintiff was not forced to violate his religious beliefs by removing his crown for a brief period while on the patio, that he was able to wear the crown elsewhere, did not need to wear his crown at all times, and was not coerced or pressured into violating his religious beliefs. Defendants argue Plaintiff cannot dispute that regulations that prohibit "clothing of certain colors and non-state-issued clothing on the patio" are necessary to maintain the institution's safety and security. Further, Defendants maintain they are entitled to qualified immunity because it was not sufficiently clear that confiscating Plaintiff's crown where alternatives were available violated his First Amendment rights.

### III.   DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

#### Parties

1. Plaintiff Adrian Lloyd (V00729) is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").

2. Lloyd was housed at Kern Valley State Prison ("KVSP") on A-Facility from April 22, 2019, to September 19, 2022.

3. Defendant Castillo was a Correctional Officer at KVSP on A-Facility for all times relevant to the allegations in the Complaint.

4. Defendant Anderson was a Correctional Sergeant at KVSP on A-Facility for all times relevant to the allegations in the Complaint.

#### Rules and Policies Regarding Religious Items

5. The Religious Personal Property Matrix (or "RPPM") "identifies a separate list of allowable personal religious property."

6. The time-relevant, and controlling, RPPM states "inmates are prohibited from possessing, using, or wearing personal religious clothing items in any shade of green, black, brown, tan, red, or blue unless otherwise indicated. Multicolored items shall not appear to be predominately one of the restricted colors previously listed."

7. CDCR Department Operations Manual ("DOM") Chapter 5, Article 43, section 54030.7 requires institutions to permit inmates to purchase [] religious items from departmentally approved special purchase vendors.

8. The RPPM prohibits specific colors because they represent security threats due to their association with strategic threat groups, also known as gangs. Moreover, these colors are prohibited to ensure the health and safety of incarcerated persons and staff.

9. Incarcerated persons may target individuals, or be targeted, based on the colors they wear. Moreover, gang colors may incite violence or be used to communicate/coordinate illegal activity within the prison.

10. Custody staff are mandated to confiscate religious property that violates state and/or department regulations and policies.

3

**KVSP-Specific Rules and Facts**

11. In 2019, inmates were not permitted to wear non-state-issued clothing when in security sensitive areas, such as the patio at KVSP.

12. "The patio" referenced is a high-traffic large concrete pad which acts as a threshold that separates A-Facility from other various buildings and facilities at KVSP.

13. In 2019, the rules regarding the patio were to prevent the transportation of weapons, drugs, or other illicit contraband throughout the institution.

14. Because the patio is a high-traffic area that allows access to different parts of the institution, inmate movement and clothing is necessarily limited to prevent the risks associated with transporting weapons, drugs, or other illicit contraband. It was also meant to help staff efficiently and effectively search and process inmates on the patio.

15. Inmates are permitted to purchase religious items, including Rastafarian crowns, from the list of approved vendors at KVSP.

16. The approved vendors sell Rastafarian crowns which are predominately gray but still have green, red, and gold stripes.

17. Plaintiff was able to acquire a Rastafarian crown from an approved vendor that did not violate policy while he was at KVSP.

18. Plaintiff was not prohibited from wearing an alternative crown at KVSP that complied with institution and department policies.

**Confiscation of Plaintiff's Crown**

19. On May 9, 2019, Defendant Castillo confiscated Plaintiff's crown.

20. Defendant Castillo confiscated Plaintiff's crown because he believed it violated existing policy by being three of the restricted colors and by being predominately one of those three colors.

21. Defendant Anderson supported the confiscation because he also believed that the crown violated policy.

22. At all times Defendants worked to uphold the rules regarding non-state-issued clothing on the patio because they understood it was necessary for inmates and staff to be safe

4

and to safely be on the patio and move throughout the prison.

23. Defendants would instruct inmates, including Plaintiff, to remove non-state-issued clothing while on the patio.

24. Defendants never prohibited Plaintiff from wearing an alternative crown that did not violate policy.

**Plaintiff's Practice of Rastafarianism**

25. Plaintiff is a self-proclaimed Rastafarian who prays three-times a day.

26. Although some Rastafarians wear crowns, they can practice Rastafarianism without wearing them.

27. Many Rastafarians practice Rastafarianism without crowns.

28. Rastafarians who do not wear crowns are not considered less devout or pious.

29. Plaintiff possessed multiple crowns while at KVSP.

30. When Defendant Castillo confiscated one of Plaintiff's crown[s], Plaintiff wore a gray beanie as "a religious alternate."

31. Plaintiff was only asked to remove his alternate crown upon entering the patio at KVSP.

32. Plaintiff was otherwise free to wear his crown elsewhere in the institution.

(Doc. 90-3 [UDF].)

IV.    **PLAINTIFF'S OPERATIVE THIRD AMENDED COMPLAINT**[3]

Plaintiff contends that on May 9, 2019, Defendant Castillo confiscated his crown. (Doc. 66 at 3.) Plaintiff alleges he informed Castillo that he was violating Plaintiff's civil rights and Defendant Anderson responded, "'No he's not.'" (*Id*.) Castillo and Anderson deprived Plaintiff of his right to wear the royal and divine colors of Rastafari or a ready alternative, as described in the California Code of Regulations. (*Id*. at 7.) He further contends Castillo and Anderson confiscated his crown. (*Id*.)

Plaintiff contends Defendants were acting under color of state law when they violated his "civil rights, CCR, and DOM guidelines." (Doc. 66 at 3.) Describing his injury, Plaintiff states he was deprived

---

[3] The undersigned has omitted references to Plaintiff's free exercise claim against Defendant Howard because that claim was severed on September 13, 2024. (*See* Doc. 69.) Plaintiff's claim proceeds in the separate action titled *Lloyd v. Howard*, case number 1:24-cv-01086-JLT-CDB (PC).

of "wearing a traditional crown in [its] royal and divine colors" ….
(*Id*.)

(Doc. 69 at 4-5.) At screening, the undersigned determined it was reasonable to infer that Plaintiff made an initial showing of a sincerely held religious belief and asserted the religious and spiritual significance of the Rastafarian crown as "royal and divine." (*Id*. at 6.) Further, Plaintiff contended Castillo and Anderson refused to permit him to wear a Rastafarian crown, or an alternative, and illegally confiscated his crown. (*Id*.) Thus, the Court found Plaintiff plausibly alleged a claim under the Free Exercise Clause against Defendants Castillo and Anderson. (*Id*.)

## V.    APPLICABLE LEGAL STANDARDS

### *Motions for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

6

contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of "thin air," and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### *First Amendment Free Exercise of Religion*

To state a claim under the Free Exercise Clause, an inmate must plausibly allege that a prison official's actions: (a) "substantially burden[ed]" the inmate's exercise of a sincerely-held religious belief; and (b) did so in an unreasonable manner -- i.e., the official's actions were not

7

"rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987); *Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015); *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). A substantial burden places more than an inconvenience on religious exercise; it must tend to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs. *Jones*, 791 F.3d at 1031-32. Plaintiff must demonstrate that prison officials prevented him from engaging in conduct which he sincerely believes is required by his faith. *Shakur*, 514 F.3d at 884-85. The underlying religious belief must be "sincerely held." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994); *see Shakur*, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the regulation is "reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884. Thus, prisons may lawfully restrict religious activities for security purposes and other legitimate penological reasons. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008). Furthermore, the Supreme Court has held that generally-applicable laws that incidentally burden a particular religion's practices do not violate the First Amendment. *Employment Div. v. Smith*, 494 U.S. 872, 878 (1990).

//

//

//

//

//

8

## VI.   EVIDENTIARY MATTERS[4]

Plaintiff has reproduced and responded to Defendants' UDFs in his opposition to Defendants' summary judgment motion. (*See* Doc. 96 at 1-23.) The Court finds Plaintiff admits UDFs 1-5 (partial), 6-8, 23 (partial), and 32; he denies UDFs 9-22, 24, 29, 30, and 31. (*Id*.) Further, the Court observes that Plaintiff failed to either expressly admit or deny UDFs 25-28; nevertheless, the Court considers them to be denials. (*Id*. at 16-19.)

The Court declines to rule on each objection. *Capitol Records, LLC v. BlueBeat, Inc*., 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2020) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised" [citation omitted]). Where material to its analysis, the Court will address relevant objections. Where the Court does not address any particular objection, it has determined the objection contains legal argument, does not challenge the veracity of the underlying fact or facts asserted by Defendants, or is irrelevant.[5] *See, e.g.*, *Burghardt-Cobb v. Inch*, No. 1:17-cv-01563-DAD-SKO, 2020 WL 1974264, at *1 n.1 (E.D. Cal. Apr. 24, 2020) ("Here, although plaintiff submitted a statement of disputed facts, each of the disputes noted by plaintiff therein are actually legal arguments, do not challenge the veracity of the underlying facts, or are irrelevant ... [t]he court therefore considers the material facts of this case to be undisputed").

## VII.   DISCUSSION

Initially, the Court notes that Defendants do not dispute Plaintiff's Rastafarian beliefs are sincerely held. Thus, the relevant issues are whether Defendants' actions substantially burdened Plaintiff's religious beliefs and whether those actions were necessary to the institution's safety

---

[4] In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

[5] As an example, in connection with UDF 9, Plaintiff states, "Your Honor as you can lucidly see Defendant Hamilton is attempting to mislead you .. with tales of colors being a threat" and "by directing you [the Court]" to evidence that has "nothing to do with gangs." (Doc. 96 at 3). This objection plainly is legal argument and does not challenge the veracity of the underlying facts asserted by Defendants.

9

and security.

### A. Defendants Did Not Substantially Burden Plaintiff's Religious Beliefs

Defendants contend they did not violate Plaintiff's First Amendment rights to the free exercise of his religion. Defendants maintain Plaintiff's Rastafarian crown included prohibited colors that raise serious security concerns associated with strategic threat groups or gangs. Further, they argue Plaintiff was wearing the crown on the KVSP patio, a sensitive area where inmates are not permitted to wear non-CDCR clothing. Additionally, Defendants contend Plaintiff's religious practice was not substantially burdened because Plaintiff was not required to wear a Rastafarian crown or could wear an alternative crown that did not violate the RPPM.

Specifically, Defendants' facts demonstrate that Plaintiff can practice Rastafarianism without wearing a crown, many Rastafarians practice their religion without wearing a crown, and that those who choose not to wear a crown are not considered less devout or pious. UDFs 26-28. Further, Defendants contend that even assuming a crown was required to practice Rastafarianism, the confiscation of Plaintiff's crown on May 9, 2019, did not substantially burden Plaintiff's religious practice because he had another suitable crown and was able to purchase other crowns through approved vendors. UDFs 29-30. Defendants contend that at most the one-time confiscation of Plaintiff's crown amounted to an inconvenience that did not substantially burden Plaintiff's religious practice. Defendants have met their initial burden by demonstrating there is no genuine dispute as to any material fact concerning substantial burden. Fed. R. Civ. P. 56(a).

Because Defendants met their initial burden, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586.

Plaintiff denied or objected to UDFs 26 through 30. For example, as concerns UDF 26, Plaintiff asserts "the vast majority of the followers of Rastafari do wear crowns as an outward expression of the inner (spiritual) love for Jah." (Doc. 96 at 18.) Regarding UDF 27, he asserts "[m]any Rastafarians practice Rastafarianism with crowns." (*Id*. at 19.) Concerning UDF 28, Plaintiff states "[s]ome divisions of Rastafarians under their tenets don't wear crowns nor locks. The vast majority of divisions of Rastafarians under their tenets do wear crowns and locks." (*Id*.)

10

Plaintiff's objections are overruled as they are based on speculative assertions about "the vast majority" and "some divisions" of the adherents to an entire religious faith. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations"); *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) (a party may not rely on speculative or conclusory testimony contained within affidavits, pleadings, or moving papers to raise a genuine dispute of material fact in an effort to defeat summary judgment); *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Coverdell v. Dep't of Soc. & Health Servs*., 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment" [emphasis omitted]). In sum, Plaintiff's objections to UDFs 26, 27, 28, and 30 are overruled.

Moreover, Plaintiff's objection or denial to UDF 29 is not well taken. He complains defense counsel "'willfully rendered' false statements in his sworn declarations" because the deposition pages relied upon do not reference "'multiple[6] crowns' anywhere." (Doc. 96 at 19-20.) But at page 60, lines 3 through 6, Plaintiff testified he "bought two crowns" and at pages 91 through 95, Plaintiff testified to having a "ready [beanie] alternate" and that Defendant Castillo did not confiscate the beanie. In other words, Plaintiff had more than one crown at the time Castillo confiscated his preferred crown. Plaintiff's objection is overruled. *Coverdell*, 834 F.2d at 762.

On this record, the undersigned finds Defendants did not substantially burden Plaintiff's religious practice. *See Freeman v. Arpaio*, 125 F.3d 732, 736-37 (9th Cir. 1997) ("To reach the

---

[6] Multiple is defined as "consisting of, including, or involving more than one." *See* https://www.merriam-webster.com/dictionary/multiple, as of July 8, 2026.

level of a constitutional violation, 'the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial and an inference with the tenet or belief that is central to religious doctrine").

In sum, and viewed in the light most favorable to Plaintiff, the undersigned finds Defendants are entitled to summary judgment because Defendants have established no genuine issue of material fact exists concerning the first element of Plaintiff's free exercise claim. *Jones*, 791 F.3d at 1031-32.

### B. Defendants' Actions Were Reasonably Related to Legitimate Penological Interests

Defendants contend their confiscation of Plaintiff's crown pursuant to policy was reasonably related to legitimate penological interests. Specifically, applying the *Turner* factors, Defendants first argue the prohibition of certain colors in the RPPM directly relates to the safety of inmates and staff "due to the colors' association with gangs and gang violence," citing UDFs 8-9. Further, Defendants maintain "inmates could create security threats by impersonating custody officers if in possession of enough clothing of prohibited colors," citing paragraph 3 of the Declaration of D. Hamilton.[7] (*See* Doc. 90-7 at 1-2, ¶ 3.) Therefore, the RPPM deemed "Plaintiff's crown contraband for being prohibited gang colors" and is "directly related to legitimate safety concerns for inmates and staff." Moreover, Defendants maintain that the KVSP rule prohibiting Plaintiff from wearing his crown on the patio is directly related to legitimate concerns for safety and security "by preventing the transportation of weapons, drugs, or other illicit contraband throughout the institution," citing UDF 13 and paragraph 8 of the Hamilton declaration. Defendants maintain the first *Turner* factor weighs in their favor.

Second, Defendants contend that because Plaintiff had "alternative means by which he can practice his religion," including "prayer, attending services, and wearing alternative crowns," citing UDF 25, Plaintiff was not denied all means of religious expression. Defendants further assert Plaintiff testified he wore a gray beanie as a religious alternate after his crown was

---

[7] D. Hamilton is the Litigation Coordinator at KVSP. (Doc. 90-7 at 1, ¶ 1.) The RPPM is attached to Hamilton's declaration as Exhibit A.

12

confiscated, had the ability to purchase and possess approved vendor crowns, and although Plaintiff "was prohibited from wearing non-state-issued clothing on the patio, including his alternate crown, Plaintiff was otherwise free to wear his crown elsewhere at KVSP," citing UDFs 17, 18, 23-24 & 30. Therefore, Defendants maintain the second *Turner* factor weighs in Defendants' favor.

Third, Defendants argue that accommodating Plaintiff's Rastafarian crown — comprised of three prohibited gang colors — "would allow inmates unrestricted access to clothing and headwear in prohibited colors," citing UDFs 8 and 9 and paragraph 3 of the Hamilton declaration. Defendants maintain that absent such a policy reasonably restricting religious clothing, "any inmate could use their religious practice as a pretense to wear clothing of prohibited colors." Such would compromise the safety of inmates and staff, increasing the risk that inmates would be targeted for wearing gang colors or that those colors could incite violence, permit gang business or the impersonation of custody staff, and allowing Plaintiff or other inmates to "possess the clothing with the restricted colors would place an unnecessary burden on prison resources to prevent misuse," citing paragraph 3 of the Hamilton declaration. Additionally, in 2019, Defendants contend that restricting inmates from wearing non-CDCR clothing on the KVSP patio "promoted safety and security by lessening the risk of inmate's transporting contraband … and making it more effective and efficient to search inmates when traversing the patio," citing UDFs 11 through 14. They maintain that without the patio policy, "a huge burden" would be created "making it harder for staff to search inmates … and increasing the possibility that an inmate could use non-approved clothing to smuggle contraband," citing UDF 14. Thus, Defendants maintain the third *Turner* factor weighs in their favor.

Finally, Defendants argue there were ready alternatives to Plaintiff's preferred confiscated crown because inmates could purchase Rastafarian crowns from approved vendors and that Plaintiff possessed "such alternative crowns and used a gray beanie as a religious alternate," citing to UDFs 15 through 18 and 29 through 30. Further, although Plaintiff was prohibited from wearing a crown on the patio, he was able to wear it elsewhere at KVSP, citing UDF 32. Hence, Defendants maintain the fourth *Turner* factor weighs in their favor.

13

Based upon the foregoing, Defendants have met their initial burden by demonstrating there is no genuine dispute as to any material fact because the policies at issue were reasonably related to legitimate penological interests. Fed. R. Civ. P. 56(a).

Because Defendants met their initial burden, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact actually does exist. *Matsushita*, 475 U.S. at 586.

As previously found, Plaintiff's objections to UDFs 29 and 30 are overruled. As concerns UDF 8, Plaintiff partially admitted that he "knows nothing about" the RPPM prohibiting specific colors because they represent security threats. The remainder of Plaintiff's objection to UDF 8 involves his assertions that he encountered no difficulties from staff when he was housed in California State Prison-Corcoran's Ad Seg or SHU units and is not material to this dispute.[8] *Coverdell*, 834 F.2d at 762. Plaintiff also partially admitted UDF 23 as concerns the accuracy of the deposition testimony relied upon by Defendants. The remainder of Plaintiff's objections — clarifying what officers request of inmate, Plaintiff's opinion that "Defendant Castillo 'went out of his way' in requesting that Plaintiff remove his ready alternate crown before entering the patio" and that once he "entered the patio gate there was 'no more' crown on the head" — are not material to this dispute. *Id.*

While Plaintiff denied or objected to UDFs 9 and 11 through 18, the objections are overruled. As an example, in denying UDF 12, Plaintiff's objections include his statement that the description is "terrible and most inaccurate" and, among other things, that the patio's foundation "is 'asphalt'" rather than concrete. Plaintiff's objections are not material. *Coverdell*, 834 F.2d at 762. In denying UDF 14, Plaintiff relies on "Exhibit C pg 134 CCR 3213(b) 'An inmate may wear or carry at any time.'" Title 15 of the California Code of Regulations section 3213(b) provides as follows: "An inmate may possess any religious item authorized in the [RPPM], which

---

[8] The undersigned notes the RPPM provides as follows: "Determinations concerning religious personal property items for individual inmates in specialized housing units (ASU/PSU/SHU) may be made on a case-by-case basis based upon the inmate's behavior/mental health status/safety/security needs. Decisions must be approved by the respective hiring authorities or designees." (Doc. 90-7 at 5.) This may explain Plaintiff's ability to wear his crown at another facility while housed in that facility's ASU and/or SHU. In any event, Plaintiff's ability to wear his crown at another facility is not relevant here.

is incorporated by reference in subsection 3190(b). As defined in the RPPM, and subject to reasonable search by staff, an inmate may wear or carry at any time, the following: beaded headband, beaded wrist band, beaded choker, religious medallion and chain, religious headgear, medicine bag, prayer beads, and tallit katan/tsitsit." Nevertheless, the RPPM plainly prohibits inmates from possessing and wearing religious clothing items "in any shade of green, black, brown, tan, red, or blue unless otherwise indicated." (*See* Doc. 90-7 at 5.)[9] Plaintiff's confiscated crown included the prohibited colors of green and red (UDF 20)[10]; therefore, it was not "authorized in" the RPPM meaning Plaintiff could not "wear" or "carry" his confiscated crown "at any time." *Cafasso, U.S. ex rel.*, 637 F.3d at 1061.

To the extent Plaintiff generally asserts Defendants have not established that the policies relied upon by Defendants involve the safety and security of the institution, those bare assertions do not overcome Defendants' evidence to the contrary. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (observing that the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it"); *Standing Deer v. Carlson*, 831 F.2d 1525, 1528 (1987) ("To ensure we afford appropriate deference to the judgment of prison officials, we restrict our inquiry to considering whether the challenged regulation is logically connected to legitimate penological concerns"); *Benjamin v. Coughlin*, 905 F.2d 571, 578-79 (2nd Cir. 1990) (considering the constitutionality of regulations restricting the wearing of crowns in designated areas and holding "[p]reventing the smuggling of contraband, such as weapons and drugs, comports with the type of penological interests contemplated under the *Turner/Shabazz* standard"); *see also Choudhry v. County of Tulare*, No. 1:21-cv-01287 KJM SAB, 2025 WL 2687942, at *13 ("When the inmate does not present enough evidence to refute a common-sense

---

[9] The undersigned finds the phrase "unless otherwise indicated" in the fifth paragraph of the RPPM is not negated by the language in the fourth paragraph that inmates "are permitted to wear and or possess personal religious clothing items as indicated in this matrix," as Plaintiff appears to believe.

[10] Plaintiff's opposition expressly states the confiscated crown included the colors "red," "gold," and "green." It appears Plaintiff overlooks the prohibition of those colors and instead focuses on the argument that his crown was multicolored, i.e., one-third red, gold, and green, and that Defendant Castillo erroneously determined that one color predominated over another. Even assuming one color did not predominate, the RPPM prohibits wearing red and green religious clothing items.

15

connection between a prison regulation and the objective that government's counsel argues the policy was designed to further the state has to present no further evidence to support its proffered penological interest, provided the governmental objective is legitimate and neutral") (internal citations omitted).

In short, and viewed in the light most favorable to Plaintiff, the undersigned finds Defendants are entitled to summary judgment because Defendants have established no genuine issue of material fact exists concerning the second element of Plaintiff's free exercise claim. *O'Lone*, 482 U.S. at 349; *Turner*, 482 U.S. at 89-90; *Shakur*, 514 F.3d at 884.

Because the Court has determined Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise of religion claim, the undersigned declines to address Defendants' qualified immunity defense. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all").

## VIII.    PLAINTIFF'S FILING OF JUNE 29, 2026

On June 29, 2026, during the undersigned's consideration of the summary judgment motion, Plaintiff filed a document titled "Motion in Re: Perjury and Good Faith." (Doc. 104.) A brief review of the 9-page submission reveals it to be a sur-reply. As Plaintiff has previously been advised, "'a party has no right to file a sur-reply, and motions are deemed submitted when the time to reply has expired.'" (Doc. 102 at 2.)  For the same reasons articulated in this Court's May 1, 2026, order, the Court declines to consider Plaintiff's untimely and improper sur-reply.

## IX.    CONCLUSION AND RECOMMENDATION

For the reasons given above, the undersigned HEREBY RECOMMENDS that Defendants' motion for summary judgment (Doc. 90) be GRANTED and that judgment be entered in their favor.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written

16

objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **July 10, 2026**

_____
UNITED STATES MAGISTRATE JUDGE